**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 16 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

HECTOR TORRES,

Defendant - Appellant.

Nos. 03-2182 and 03-2241

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-02-1595 MCA)**

Richard B. McClarkin, Albuquerque, New Mexico, for Defendant - Appellant.

Laura Fashing, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

Before **EBEL**, **HENRY**, and **HARTZ**, Circuit Judges.

**HARTZ**, Circuit Judge.

## I.    BACKGROUND

Defendant Hector Torres pleaded guilty to conspiring to possess with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846. He reserved his right to appeal the district court's denial of his motion to suppress statements and physical evidence. The judgment of conviction was entered on July 25, 2003. Defendant did not file a notice of appeal until August 12, 2003—beyond the 10-day period for filing criminal appeals set forth in Federal Rule of Appellate Procedure 4(b)(1). The appeal was assigned number 03-2182.

Because the notice of appeal was filed more than 10 days but less than 40 days after entry of judgment, we partially remanded the appeal to the district court so that it could assess whether the delay in filing was due to excusable neglect, which could be grounds for a 30-day extension of the time to appeal. *See* Fed. R. App. P. 4(b)(4). Defendant then filed in district court a "Motion for Enlargement of Time and Leave to File Amended Notice of Appeal," explaining that defense counsel had incorrectly believed that Defendant had 30 days following entry of judgment in which to file an appeal. The district court granted the motion on October 7, 2003, finding that Defendant's untimeliness was the result of excusable neglect.

On October 7, 2003, Defendant filed a second appeal (assigned number 03-2241) seeking review of the district court's denial of his motion to suppress. The second appeal was consolidated with Defendant's first appeal (number 03-2182) for procedural purposes. We now dismiss both appeals for lack of jurisdiction because the district court abused its discretion in finding that the untimely filing of the notice of appeal was due to excusable neglect. Although the government has not challenged our jurisdiction to hear this appeal, "it is the duty of the federal court to determine the matter *sua sponte*." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

## II.    DISCUSSION

"A court of appeals acquires jurisdiction of an appeal only upon the filing of a timely notice of appeal[;] this requirement is mandatory and jurisdictional." *Gooch v. Skelly Oil Co.*, 493 F.2d 366, 368 (10th Cir. 1974). Federal Rule of Appellate Procedure 4(b)(1)(A) states:

> In a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days after the later of:
>
>> (i) the entry of either the judgment or the order being appealed; or
>
>> (ii) the filing of the government's notice of appeal.

But Rule 4 also provides that "[u]pon a finding of excusable neglect or good cause[1], the district court may . . . extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)." Fed. R. App. P. 4(b)(4). "When a district court grants an extension for excusable neglect, filing a notice of appeal within the thirty-day extension allowed by the rule establishes appellate jurisdiction." *United States v. Leonard*, 937 F.2d 494, 495 (10th Cir. 1991). "[A] trial court's finding as to the presence or absence of 'excusable neglect' as that term is used in Fed. R. App. P. 4 should not be overturned by us on appeal unless there has been a clear abuse of discretion." *Gooch*, 493 F.2d at 368.

The leading case on "excusable neglect" is *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), in which the Supreme Court addressed the meaning of that term in Bankruptcy Rule 9006(b). The rule provides that:

> when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit

---

[1] "Good cause comes into play in situations in which there is not fault--excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant." *Bishop v. Corsentino*, No. 02-1485, slip op. at 5-6 (10th Cir. June 9, 2004) (internal quotation marks omitted). There is no claim of "good cause" here.

the act to be done where the failure to act was the result of excusable neglect.

The bankruptcy court had mailed a notice to creditors announcing a meeting and setting a bar date for filing proofs of claim against Pioneer. *Pioneer*, 507 U.S. at 383-84. Although the president of the respondents' corporate general partners received the notice, the respondents failed to file a proof of claim by the bar date. *Id.* at 384. The respondents sought relief under Rule 9006(b)(1), explaining that their attorney was not aware of the bar date because "he was experiencing a major and significant disruption in his professional life caused by his withdrawal from his former law firm," and thus did not have access to the case file until the bar date had passed. *Id.* at 384 (internal quotation marks omitted). The bankruptcy court refused to accept the late filing on the ground that "a party may claim excusable neglect only if its failure to timely perform a duty was due to circumstances which were beyond its reasonable control." *Id.* (internal quotation marks and brackets omitted). The Supreme Court granted certiorari "[b]ecause of the conflict in the Courts of Appeals over the meaning of 'excusable neglect.'" *Id.* at 387.

The Court rejected the notion that excusable neglect exists only when a delay in filing is the result of circumstances beyond a party's control, stating that "by empowering the courts to accept late filings where the failure to act was the result of excusable neglect, . . . Congress plainly contemplated that the courts

would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388 (internal quotation marks omitted). The Court held that the determination whether a party's neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. Such circumstances include "[1] the danger of prejudice to the [nonmoving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.*

Although *Pioneer* did not involve the interpretation of the precise rule at issue in this case, it is nonetheless highly persuasive. The Court's discussion in *Pioneer* was not confined to Bankruptcy Rule 9006. Indeed, in explaining why it granted certiorari, the Court noted that the Courts of Appeals had "divided in their interpretations of 'excusable neglect' as found in Rule 4(a)(5) of the Federal Rules of Appellate Procedure." *Id.* at 387 n.3. And the opinion extensively addressed nonbankruptcy rules that use the term "excusable neglect." *See id.* at 391-95. To be sure, the Court recognized that the term might not have the same meaning in different rules, *see id.* at 394-95 (discussing difference between Rule

9006(b)(1) and Fed. R. Civ. P. 60(b)(1)); but absent some specific reason to depart from *Pioneer*, we should follow the Supreme Court's lead.

Accordingly, in *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994), we concluded that "[b]ecause the [*Pioneer*] Court's analysis of what constitutes 'excusable neglect' in the bankruptcy context rested on the plain meaning of the terms, there is no reason that the meaning would be different in the context of Fed. R. App. P. 4(a)(5)." We now likewise conclude that the Supreme Court's construction of "excusable neglect" in *Pioneer* also applies to the term "excusable neglect" as it is used in Federal Rule of Appellate Procedure 4(b)(4). *See* 16A Wright, Miller & Cooper, Federal Practice & Procedure § 3950.9 at 250 (3d ed. 1999) ("It is beyond belief that 'excusable neglect' would have one meaning in Appellate Rule 4(a) and a different meaning in Appellate Rule 4(b).") ; *cf. In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1210 (D.C. Cir. 2003) (suggesting that special interest of courts of appeal in the filing of timely notices of appeal may justify stricter interpretation of "excusable neglect" in that context).

Applying the *Pioneer* factors to the facts of this case, we determine that the district court abused its discretion in finding excusable neglect. Three of the relevant circumstances noted in *Pioneer* weigh in favor of a finding of excusable neglect. Defendant filed his notice of appeal only 18 days after the entry of

judgment; it does not appear that the government would be prejudiced by the delay if Defendant's appeal is permitted to proceed; and there is no indication that defense counsel acted in bad faith. Nonetheless, "fault in the delay remains a very important factor--perhaps the most important single factor--in determining whether neglect is excusable." *City of Chanute*, 31 F.3d at 1046; *see Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) ("We have observed that the four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import." (internal quotation marks and bracket omitted)); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000) (same).

The reason for the delay here was simply that defense counsel confused the filing deadlines for civil and criminal appeals. In *Pioneer* the Supreme Court said that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392. Even after *Pioneer* adopted an equitable, balancing test, several circuits have embraced the rule that "'[t]he excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules.'" *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994) (quoting *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 515 (2d Cir. 1985)); *accord Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 133 (7th Cir.

1996); *see Lowry*, 211 F.3d at 464 ("Notwithstanding the 'flexible' *Pioneer* standard, experienced counsel's misapplication of clear and unambiguous procedural rules cannot excuse his failure to file a timely notice of appeal."); *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir. 1997) ("as a matter of law, . . . an attorney's misunderstanding of the plain language of a rule cannot constitute excusable neglect such that a party is relieved of the consequences of failing to comply with a statutory deadline"); *cf. Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 631 (1st Cir. 2000) ("A misunderstanding that occurs because a party (or his counsel) elects to read the clear, unambiguous terms of a judicial decree through rose-colored glasses cannot constitute excusable neglect."); *McCurry v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 595 (6th Cir. 2002) (interpreting Fed. R. Civ. P. 60(b)(1); "an attorney's inaction or strategic error based upon a misreading of the applicable law cannot be deemed 'excusable' neglect"). And one circuit, although unwilling to be categorical on the matter, has indicated that the misreading of a clear rule is a highly unlikely candidate for relief. *See Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 470 (5th Cir. 1998) ("Although . . . we [leave] open the possibility that some misinterpretations of the federal rules may qualify as excusable neglect, such is the rare case indeed. Where, as here, the rule at issue is unambiguous, a district court's determination that the neglect was inexcusable is virtually unassailable.").

*But cf. Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 886 (9th Cir. 2001) (interpreting Fed. R. Civ. P. 60(b)(1); "[w]hile an attorney's egregious failure to read and follow clear and unambiguous rules might sometimes be excusable neglect, mistakes construing the rules do not usually constitute excusable neglect." (internal quotation marks omitted)); *In re Vitamins Antitrust Class Actions*, 327 F.3d at 1209-1210 (applying Fed. R. Civ. P. 6(b) and 60(b)). In our view, defense counsel's misinterpretation of a readily accessible, unambiguous rule cannot be grounds for relief unless "[t]he word 'excusable' [is to be] read out of the rule." *Prizevoits*, 76 F.3d at 134.

Accordingly, the district court abused its discretion in finding that the delay in filing was the result of excusable neglect. We therefore lack jurisdiction to hear Defendant's appeals. *See Gooch*, 493 F.2d at 368.

III. **CONCLUSION**

We DISMISS the appeals for lack of jurisdiction.